UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

     MICHAEL B. WHITE and
     DARLA K. WHITE,                     Case No. 13-21977-dob
        Debtor.                         Chapter 7 Proceeding
                                         Hon. Daniel S. Opperman

_____/

MICHAEL B. WHITE,
        Plaintiff,

v.                                     Adv. Proc. No. 21-02033-dob

MICHAEL RINESS, ELIZABETH RINESS, AND
JPMORGAN CHASE BANK, N.A.,
        Defendants.

_____/

OPINION DENYING PLAINTIFF MICHAEL WHITE'S MOTION FOR LEAVE TO FILE
AMENDED ADVERSARY PROCEEDING COMPLAINT AND GRANTING JPMORGAN
CHASE BANK, N.A.'S RENEWED MOTION TO DISMISS AND FOR A LITIGATION
INJUNCTION BUT DENYING REQUEST FOR SANCTIONS

Introduction

Plaintiff Michael White requests the right to amend his complaint but Defendants argue he should not have that right. Defendant JPMorgan Chase Bank, N.A. ("Chase") seeks dismissal of the claims against it, an injunction prohibiting Plaintiff from initiating future litigation unless a Court allows him to do so, and for sanctions. Mr. White denies Chase is entitled to any relief. For the reasons stated in this Opinion, the Court denies the relief requested by Mr. White and partially grants the relief requested by Chase.

Findings of Fact

Per an Opinion dated May 5, 2022, this Court made certain findings of fact which are reproduced as follows:

<u>Findings of Fact</u>

A.  Pre-Bankruptcy Events

Stuart and Bonnie Thornton ("Thornton") owned property at 1821 Ambrose Road, Mayville, Michigan ("Property") that had substantial sand and gravel deposits.  On August 27, 2007, they granted a mortgage to Chase Bank, U.S.A., N.A., the predecessor of JPMorgan, to secure a loan, and this mortgage was duly recorded with the Tuscola County Register of Deeds.  In 2010, the Thorntons entered into a Lease for Sand and Gravel ("Lease") with Cotton Trucking & Excavating, LLC ("Cotton") and White-Co. Inc. ("White-Co.") that was also duly recorded.  This Lease allowed Cotton and White-Co. the right to mine and extract the sand and gravel.  White-Co. subsequently assigned its rights to Mr. White. Thereafter, Mr. White worked diligently to obtain the necessary permits and zoning confirmations to mine and extract the sand and gravel.

The Thorntons, however, were unable to make the payments on their loan, so JPMorgan, as successor and assignee of Chase, initiated foreclosure by advertisement procedures resulting in a foreclosure sale on August 30, 2012, with JPMorgan as the successful bidder and purchaser of the Property.  The Thorntons did not redeem their interest and the redemption period expired on March 7, 2013.

B.  Mr. and Ms. White File Chapter 11

Michael and Darla White filed a petition seeking Chapter 11 relief with this Court on July 30, 2013.  In their Schedule A, Real Property, they listed "Thornton sand-gravel lease" with a value of $20,520 and an explanation that Mr. White owned 20% of the Lease.  At this time, as Mr. White has subsequently advised the Court, certain portions of sand and gravel had been extracted and piled on the Property.

The Whites' Chapter 11 case was converted to a Chapter 7 proceeding on August 22, 2014.  During the course of the Chapter 7 proceeding, the Trustee abandoned the 20% interest in the Lease on February 2, 2016 and subsequently abandoned the White-Co. interest on December 19, 2016.

C.  JPMorgan, Mr. and Ms. Riness, and the Property

Mr. and Ms. Riness presented a Purchase Agreement for the Property to JPMorgan and, after negotiations, a sale transaction was completed on September 16, 2013.  In November 2013, Mr. White entered onto the Property but left after the police were called and appeared on the Property.  Mr. White stopped extracting sand and gravel and by March 2015, the extractor equipment was removed.  Until filing this Adversary Proceeding, he did not petition the Court for relief for a violation of the automatic stay regarding the Property.

2

D.  State Court Actions

Mr. White filed a Complaint with the Tuscola County Circuit Court ("Circuit Court") on August 20, 2018 naming JPMorgan and Mr. and Ms. Riness as Defendants.  He based his claims on the lease, as well as the profit á prendre theory, arguing that the mortgage foreclosure sale did not affect his lease rights and other rights.  JPMorgan filed a Motion to  Dismiss which the Circuit Court granted on January 2, 2019.  Mr. White filed a Claim of Appeal with the Michigan Court of Appeals.  On June 18, 2020, the Michigan Court of Appeals affirmed much of the Circuit Court's decision, but remanded a limited issue and allowed Mr. White to amend his Complaint as to tangible personal property.  Relevant portions of the Michigan Court of Appeals Opinion are as follows:

III.  FORECLOSURE

Plaintiff argues that his rights under the lease were not terminated by the foreclosure.  We disagree.

"Foreclosure sales by advertisement are defined and regulated by statute. Once the mortgagee elects to foreclose a mortgage by this method, the statute governs the prerequisites of the sale, notice of foreclosure and publication, mechanisms of the sale, and redemption."  *Senters v. Ottawa Savings Bank, FSB*, 443 Mich 45, 50; 503 NW2d 639 (1993)  (citations omitted).  Foreclosure by advertisement is governed by MCL 600.3208 *et seq*  With respect to the rights of the purchaser at a foreclosure sale, MCL 600.3236 provides:

Unless the premises described in such deed shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee therein named, his heirs or assigns, *all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter*, except as to any parcel or parcels which may have been redeemed and canceled, as hereinafter provided; and the record thereof shall thereafter, for all purposes be deemed a valid record of said deed without being re-recorded, but no person having any valid subsisting lien upon the mortgaged premises, or any part thereof, *created before the lien of such mortgage took effect*, shall be prejudiced by any such sale, nor shall his rights or interests be in any way affected thereby.  [Emphasis added.]

Once the statutory redemption period lapses, the mortgagor's right, title, and interest in and to the property are extinguished.  *Piotrowski v State Land Office Bd*, 302 Mich 179, 187; 4 NW2d 514 (1942); *Trademark Properties of Michigan, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 138-139; 863 NW2d 344 (2014). Furthermore, after the redemption period expires the mortgagor can no longer assert any claim with respect to the property.  *Piotrowski*, 302 Mich at 187.  Similarly, any interests in the property created after the mortgagor entered into the mortgage also are extinguished.  See MCL 600.3236; *Senters*, 443 Mich at 50-53; *In re*

*Parlovecchio*, 315 BR 694 (Bankr ED Mich 2004) (applying Michigan law and holding that "[w]hen not redeemed, a sheriff's deed ripens into legal title and cuts off all junior interests in the property that were not consented to by the mortgagee").

Defendants rely on MCL 600.3236 in support of their argument that plaintiff's lease interest in the subject property was extinguished upon expiration of the redemption period after foreclosure. The language in MCL 600.3236, that a grantee receives "all the right, title, and interest *which the mortgagor had at the time of the execution of the mortgage,"* supports defendants' position that upon the foreclosure sale, any lease rights acquired after execution of the mortgage are extinguished, and the purchaser receives full title and rights originally obtained by the mortgagor. However, plaintiff focuses on the phrase, "or at any time thereafter" to argue that subsequent events affecting the mortgagor's right, title, and interest also affect the grantee's interest. Caselaw does not support plaintiff's position.

In *Schaffer v Eighty-One Hundred Jefferson Ave East Corp*, 267 Mich 437; 255 NW 324 (1934), the defendant De Vos organized the defendant corporation, Eighty One Hundred Jefferson Avenue East Corporation, to sell apartment units to the plaintiffs who would hold ownership interest in the corporation and leases for the life of the corporation. The prospective purchasers were given notice that the real property was subject to a mortgage. *Id*. at 439-441. The mortgagee foreclosed on the property. *Id*. at 443. The plaintiffs claimed that the foreclosure proceedings were void because they were necessary parties, but received no notice of the proceedings. *Id*. at 443-444. The Court held that "[t]he situation, unequivocally created by the instruments and accepted by the purchasers, is that the association owns the property and plaintiffs are lessees with no more legal or equitable title than have the stockholders in the other corporation. Plaintiffs, as subsequent lessees, are not necessary parties to the foreclosure suit." *Id*. at 447.

In *Tilchin v Boucher*, 328 Mich 335; 43 NW2d 885 (1950), the plaintiff leased property from the vendees of a land contract. The lease was not recorded. *Id*. at 357. The vendee defaulted in the land contract payments. *Id*. The vendor commenced summary forfeiture proceedings, without including the plaintiff as a party. *Id*. at 357-358. Our Supreme Court concluded that the plaintiff "was not a necessary party, and his lease interest was also terminated by the summary proceedings." *Id*. at 358.

In *Hanson v Huetter*, 339 Mich 130, 134; 62 NW2d 663 (1954), our Supreme Court held that "[a] subsequent grant of easement by the mortgagor without the mortgagee's permission and consent could not have been enforced against the mortgagee. The foreclosure placed in defendants' grantor all the right and title that existed in the mortgagee at the time of the execution of the mortgage."

The decisions in *Schaffer*, *Tilchin*, and *Hanson* support defendants' position that plaintiff's lease interest was extinguished at the close of the redemption period. The holding in *Schaffer* that the tenants were not necessary parties to the foreclosure

implies that they had no legal cognizable expectation to continue their leases. The holding in *Tilchin* directly states that the plaintiff's lease interest was terminated. The holding in *Hanson* regarding termination of the easement applies by analogy to plaintiff's lease interest. Accordingly, the trial court did not err when it determined that plaintiff's lease interest was extinguished when the property was not redeemed following the foreclosure sale; plaintiff entered into the lease after the property was already mortgaged to JPMorgan and there is no evidence that JPMorgan consented to the lease.

## IV. PERSONAL PROPERTY

Plaintiff argues that if he was not entitled to continue his lease, he was still entitled to retrieve from the subject property stone and gravel that had already been extracted from the land while the lease was in effect.

Plaintiff relies on *Blough v Steffins*, 349 Mich 365, 374; 84 NW2d 854 (1957), in which our Supreme Court held that a sharecrop agreement "effected constructive severance of the corn crop and rendered it personal property as between the parties to that agreement." Consequently, when the original landowner and party to the sharecrop agreement conveyed the real property to the defendant, "the crop was personalty as defendant Steffens likewise and did not pass with the land," but instead remained the personal property of the plaintiff planter. *Id*. Plaintiff's reliance on *Blough* is misplaced because this case does not involve property rights as between parties to an agreement.

We agree, however, that plaintiff would have been entitled to a reasonable opportunity to remove any personal property from the premises upon foreclosure. In *Tilchin*, 328 Mich at 359, our Supreme Court stated that the plaintiff lost his opportunity to remove cabins from the property by failing to remove them when he had "some knowledge of the land contract forfeiture," thereby suggesting that a plaintiff whose lease interest is extinguished by foreclosure has a right to retrieve personal property within a reasonable time of the foreclosure. In *Saveski v California Fed Savings & Loan Ass'n*, 63 Mich App 747, 748; 235 NW2d 34 (1975), the plaintiffs leased and occupied the upper flat of a two-flat home. The owners lived in the lower flat. *Id*. The lender foreclosed on the property and brought an action to recover possession after the expiration of the redemption period. *Id*. at 748-749. The bailiff executing the writ of restitution removed and destroyed the plaintiffs' possessions. *Id*. This Court reversed summary disposition for the defendant on the ground that the plaintiffs established a genuine issue of material fact regarding the defendants' knowledge of the dual occupancy. *Id*. at 751-752. This holding supports the conclusion that renters do not lose their rights to their tangible personal property on foreclosed property. See *id*.

Whether plaintiff was denied the right to retrieve personal property from the subject property is a factual issue that cannot be resolved by the pleadings. Generally, the trial court "shall give the parties an opportunity to amend their

pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I). Given plaintiff's allegations that equipment and extracted sand and gravel remained on the property before foreclosure, we remand this matter to the trial court to permit plaintiff to amend his complaint to assert a claim related to any tangible personal property on the foreclosed property which he was not afforded a reasonable opportunity to remove.

## V. PLAINTIFF'S REMAINING ARGUMENTS

### A. EASEMENT

Plaintiff asserts that he had at least an easement right to access his personal property. We disagree.

"An implied easement may arise in essentially two ways: (1) an easement by necessity and (2) an easement implied from a quasi-easement." *Charles A Murray Trust v Futrell*, 303 Mich App 28, 41; 840 NW2d 775 (2013) (quotation marks and citation omitted). "An easement by necessity may be implied by law where an owner of land splits his property so that one of the resulting parcels is landlocked except for access across the other parcel." *Id*. (quotation marks and citation omitted). "In contrast, an easement implied from a quasi-easement requires that at the severance of an estate an obvious and apparently permanent servitude already exists over one part of the estate and in favor of the other." *Id*. at 42 (quotation marks and citation omitted). This case does not involve any severance of real property. Accordingly, neither of these theories applies to this case.

### B. PROFIT Á PRENDRE

Plaintiff argues that he has continuing rights to the sand and gravel under a theory of a profit á prendre. We disagree.

"A profit á prendre is the right to acquire, by severance or removal from another's land, something previously constituting part of the land." *Hubscher & Son, Inc v Storey*, 228 Mich App 478, 483; 578 NW2d 701 (1998); see also, e.g., *VanAlstine v Swanson*, 164 Mich 396, 405; 417 NW2d 516 (1987). A profit á prendre may grant "the right to enter upon the lands of another[] and remove gravel or other material therefrom." *Stockdale v Yerden*, 220 Mich 444, 448; 190 NW 225 (1992); see also, e.g., *VanAlstine*, 164 Mich App at 405 (addressing a profit á prendre of mineral rights). A profit á prendre "is distinguishable from a mere license or easement because it includes the right to remove," but "[t]he holder of the profit owns the minerals only after severance." *VanAlstine*, 164 Mich App at 405. Consequently, there is no right to use the property except as incident to the right of removal. *Stevens Mineral Co v Michigan*, 164 Mich App 692, 698; 418 NW2d 130 (1987). "Until the right is actually exercised and possession is taken, it is a floating, indefinite, and incorporeal right." *Id*.; see also *VanAlstine*, 164 Mich

6

App at 405. The only distinguishing characteristics between an easement and a profit á prendre is that a profit á prendre grants the holder "the right to remove." *VanAlstine*, 164 Mich App at 405.

The body of caselaw discussing this theory establishes nothing more than that plaintiff had rights pursuant to a lease to remove sand and gravel. As such, a profit á prendre does not change the general rule: a lease executed after a mortgage is extinguished through foreclosure and is null and void if the mortgage has not been redeemed. Thus, plaintiff's profit á prendre was extinguished by the foreclosure.

## C. MCL 565.81

Plaintiff argues that MCL 565.81 precludes a mortgagee from accepting a pledge of oil and gas rights. MCL 565.81 provides that "it shall be lawful to assign in the mortgage . . . all or any part of the oil and gas located in, on or under oil and gas properties, and all or any part of the rents and profits from oil and gas properties . . . as security for the indebtedness secured by the mortgage or deed of trust." This statute has no relevance to plaintiff's lease because plaintiff's lease was not in effect at the time the mortgage was executed. Furthermore, plaintiff's lease was for sand and gravel rights, not for oil and gas rights. Finally, plaintiff also raises arguments regarding contractors' liens and mechanics' liens, which similarly have no relevance to this case.

## D. EXTENT OF JP MORGAN'S SECURITY INTEREST

Plaintiff asserts that its lease is not affected by JP Morgan's security interest because the security interest did not encompass the lease. This argument is without merit. Plaintiff does not identify any language in the mortgage documents excepting sand and gravel rights. Regardless, because plaintiff's lease arose after the mortgage was executed, it was extinguished upon foreclosure of the mortgage as discussed earlier.

## E. ROYALTY PAYMENTS

Plaintiff's arguments about the royalty stream are not entirely clear. He seems to argue that JP Morgan and its successors received the same rights and duties that the Thorntons held, i.e., the contractual obligation to allow plaintiff to continue his mining activities until the lease expired along with the right to receive royalty payments in accordance with the lease. But, as discussed and stated numerous times earlier, the lease was extinguished when the foreclosed property was not redeemed. Thus, JP Morgan and its successors own the entirety of the sand and gravel rights on the property, not simply a right to royalty payments.

## F. DUE PROCESS

Plaintiff argues that he had a right to notice of the foreclosure proceedings pursuant to the Due Process Clause, US Const, Am XIV. "The Fourteenth

Amendment to the United States Constitution and Article 1, § 17 of Michigan's 1963 Constitution provide that the state shall not deprive a person of life, liberty, or property without due process of law." *In re Keyes Estate*, 310 Mich App 266, 274; 871 NW2d 388 (2015). "When a protected property interest is at stake, due process generally requires notice and an opportunity to be heard." *Id*. But "foreclosure by advertisement is not a judicial action and does not involve state action for purposes of the Due Process Clause, but rather is based on contract between the mortgagor and the mortgagee." *Cheff v Edwards*, 203 Mich App 557, 560; 513 NW2d 439 (1994). Michigan caselaw holds that lessees are not entitled to notice of foreclosure proceedings. *Tilchin*, 328 Mich at 358. Thus, the foreclosure by advertisement in this case did not violate plaintiff's due process rights.

## G. FORECLOSURE BY ADVERTISEMENT

Plaintiff cites no authority for his argument that foreclosure by advertisement cannot affect the rights of interested parties who were not parties to the mortgage agreement. "[A]ppellants may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims; nor may they give issues cursory treatment with little or no citation of supporting authority." *VanderWerp v. Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008). Therefore, this argument may be deemed abandoned. *Id*. In any event, the mortgage was recorded before plaintiff entered into the lease agreement with the Thorntons. Plaintiff thus had notice of the mortgage, and the potential consequences of foreclosure.

## H. PURCHASE AGREEMENT

Plaintiff argues that the purchase agreement between JP Morgan and the Rinesses excluded sand and gravel interests. Plaintiff relies on the following provisions in the sales documents:

Subject to no other liens or contractor on property, Buyer to assume mineral rights. Dragline unit to be removed at closing.

* * *

Buyer understands and acknowledges that the property may contain mechanic's or materialmen's liens or other liens resulting from alleged violations of local ordinances and buyer is taking such property subject to such liens . . . .

* * *

6. PERSONAL PROPERTY. Items of personal property are not included in

8

this sale.  . . .  Any personal property on the Property may be subject to claims of third Parties.

These provisions are from the agreement between JP Morgan and the Rinesses.  They do not confer any benefit on plaintiff.  They absolve JP Morgan of responsibilities toward the Rinesses regarding any third-party claims, but they do not create any third-party rights to personal property or liens.  Those rights must derive from some other source.  Indeed, the statements, "Buyer to assume mineral rights" and "[d]ragline unit to be removed at closing" are contrary to plaintiff's claimed property interest.

## I.  DAMAGES

Plaintiff asserts in his statement of questions presented that he is entitled to recover damages from the Rinesses because they removed an entrance sign, blocked his access to the mining site, and threatened to remove his equipment. Plaintiff, however, fails to separately address this issue in the body of his brief, thereby abandoning the issue. *VanderWerp*, 278 Mich App at 633.

## VI.  CONCLUSION

Affirmed in part and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.  We award no costs because no party has prevailed in full, MCR 7.219(A).

*White v. Riness et al.*, No. 347924, 2020 WL 3397395, at *2-6 (Mich. Ct. App. June 18, 2020) (footnotes omitted).

Mr. White filed a Leave to Appeal to the Michigan Supreme Court and that Court denied his request on March 30, 2021.

### E.  Mr. White Files an Amended Complaint

On June 3, 2021, Mr. White filed a 38-page Amended Complaint with 199 paragraphs with the Circuit Court.  JPMorgan filed a Motion to Dismiss this Amended Complaint, which the Circuit Court granted on September 13, 2021.  Mr. White filed a Motion for Reconsideration, which the Circuit Court denied on October 12, 2021.  Other claims raised by Mr. White against Mr. and Ms. Riness were addressed by the Circuit Court and a final dismissal order dated November 30, 2021 was entered.  Mr. White filed a Claim of Appeal to the Michigan Court of Appeals on December 16, 2021 and that appeal is pending.

### F.  Mr. White Files the Instant Adversary Proceeding

On November 1, 2021, Mr. White filed a Complaint with this Court against JPMorgan and the Rinesses.  This Complaint has twelve counts and 211 paragraphs. Many, but not all of the paragraphs are similar to those stated in the Complaint and Amended Complaint filed with the Circuit Court.  As for JPMorgan, Counts One

9

through Four allege violations of Section 362, Count Seven is entitled Trespass to Chattels, Count Eight is entitled Breach of Contract, Count Nine is entitled Tortious Interference with a Business Relationship, and Counts Eleven and Twelve seek Declaratory Judgment and Injunctive Relief, respectively.

A comparison to the State Court Complaint, as amended, reveals the same factual basis for the state and bankruptcy actions, although Counts 1-4 are labelled as violations of Section 362, each count relies on rights under the Lease or the profit á prendre theory. Count Seven recites Section 362 but is labeled "Trespass to Chattels". Likewise, Count Nine labelled as "Tortious Interference with a Business Relationship", references Section 362 but is based on state law principles. Count Eight, labelled "Breach of Contract" is state law based and does not refer to Section 362.

Overall, Mr. White seeks relief from JPMorgan in Counts 1-4, 7-9 and 11-12. JPMorgan asks this Court to dismiss all these Counts.

For the sake of brevity and chronological order, the Analysis section of the Court's Opinion

was:

## Analysis

In addition to the general standards of law stated earlier, the Court recites a few principles of bankruptcy law applicable to this case. First, while Section 541 defines property of the bankruptcy estate, property rights are controlled by the applicable state law. *Rodriguez v. Fed. Deposit Ins. Corp.*, 140 S. Ct. 713 (2020); *Butner v. U.S.*, 440 U.S. 48 (1979). This means that this Court must turn to Michigan law to determine the property of the estate.

Next, in a foreclosure setting once a foreclosure sale takes place, the automatic stay provisions of Section 362 do not toll or extend a state statutory redemption period. *Federal Land Bank of Louisville v. Glenn, et al.* (*In re Glenn*), 760 F.2d 1428, 1442 (6th Cir. 1985).

With these standards, the Court initially looks at the Michigan Court of Appeals Opinion and finds that many of the property issues raised by Mr. White have been addressed by that Court. In short, the Michigan Court of Appeals held that Mr. White does not have real estate rights or rights under the Lease because those rights were extinguished by the foreclosure proceedings. Accordingly, Counts One through Four, which are based on a theory of property rights that do not exist, must be dismissed. While it is true Mr. White added references to Section 362, which would be recognized in this Court, the predicate for a Section 362 action, namely property of the estate of Mr. White, does not exist.

The Court reaches this conclusion in part because the property interests of the estate are set by Michigan law, but also because the doctrines of res judicata and collateral estoppel require such a result. Here, as to the real estate issues and Lease rights, all the factors of *Dubuc* and *Eyde* apply – there is a final decision on the merits, the issues were actually litigated, and the parties are identical. Hence, res judicata applies. Likewise, the *Gates* elements are met, so collateral estoppel applies. Finally, to the extent Mr. White wishes this Court to act as an appellate court to review the Michigan Court of Appeals or Michigan Supreme Court, the Rooker-Feldman Doctrine bars this Court from doing so.

The same analysis applies to Counts Seven, Eight, and Nine because many of the allegations in these counts either refer to real estate or Lease rights already determined by the Michigan Court of Appeals. It is true that the issue of use of the sand and gravel was remanded to the Circuit Court, but that Court has now decided those issues against Mr. White. The appellate process is under way in the Michigan Courts such that this Court should not interfere with a court system that is better equipped to address state law questions clearly within its jurisdiction.

Moreover, intervention by this Court would be premature and counterproductive. As it stands, the Michigan Courts have ruled Mr. White has no property rights or causes of action. Again, the statutory predicate for this Count – Section 362 – requires an interest of the debtor that needs to be protected. Presently, Mr. White does not have any such right, so this Court cannot enter relief. Also, the doctrines of res judicata, collateral estoppel, and Rooker-Feldman bar this Court from acting as requested by Mr. White.

At oral argument, Mr. White articulated a difference between determination of a property right and the enforcement of a property right. He originally sought relief from the state courts in 2018 to enforce his rights, but now comes to this Court for a determination of property rights. While this is an interesting distinction and tactic, it ignores that rights of the bankruptcy estate are set by state law. Here, the Michigan Courts have articulated those rights and it is not the province of this Court to reverse the state courts.

Mr. White also argues the statute of limitations should be tolled during the time the rights were in the bankruptcy estate. While he is correct that *Auday v. Wet Seal Retail Inc.*, 698 F.3d 902 (6th Cir. 2012) prohibited him from initiating a claim, the Court could not find authority to toll a statute of limitations in this situation.

There is an area where the Court sees a potential Section 362 action. The Michigan Court of Appeals remanded an issue to the Circuit Court as to certain personal property, namely the sand and gravel already extracted. The Circuit Court ruled against Mr. White, but that ruling is on appeal. If the Michigan Court of Appeals reverses or remands, this Court may have the authority to rule on a Section

11

362 violation as pled in Counts 7 and 9[1]. Presently, however, this Court cannot act until that happens.

Counts Eleven and Twelve seeking Declaratory Judgment and Injunctive Relief do not exist independently and must have a supporting substantive foundation. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007); *Int'l Ass'n of Mach. and Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 668 (6th Cir. 1997). Presently, there is not a substantive foundation, but one may exist if the Michigan courts rule in favor of Mr. White.

<u>Conclusion</u>

JPMorgan's Motion to Dismiss is granted as to Counts One, Two, Three, Four, and Eight. The Court denies the Motion to Dismiss as to Counts Seven, Nine, Eleven and Twelve, but will revisit that determination and will likewise address the issuance of an injunction after the Michigan appellate process is completed.

Accordingly, this Court waited until the state appellate process was completed. As oral argument neared, Mr. White filed a Motion to Dismiss his appeal. On October 17, 2022, the Michigan Court of Appeals entered this Order:

The motion to dismiss pursuant to MCR 7.211(C)(2) is GRANTED. The appeal is dismissed without prejudice to appellant moving this Court for whatever relief is still available under the Court rules at the conclusion of the related bankruptcy proceedings.

The motion to reschedule is DISMISSED as moot given the dismissal of the case.

Chase restated and renewed its Motion to Dismiss, arguing that the dismissal of the Michigan Court of Appeals proceeding essentially was a final determination of the state court of Mr. White's rights. As this Court's May 5, 2022 Opinion stated, this Court saw a potential Section 362 action that remained open because of an appeal of the ruling of the Tuscola County Circuit Court against Mr. White. The dismissal of that appeal, however, leaves this Court with the

---

[1] Parts of Count 4 – Common Law Conversion of Personal Property – may also be implied such that a portion of this count could survive, but those portions seem to be the same as the rights in Count 7 – Trespass to Chattels. If need be, the Court reserves those portions for later consideration with Count 7.

determination of the Tuscola County Circuit Court as the final authority on these issues. That Court determined that Mr. White did not have any rights.

Mr. White seeks to amend his complaint by adding counts alleging common law conversion, concert of action, forcible ejection from land, recovery or possession for interest in land, and negligent misrepresentation. In response, Chase argues amendment is futile because these counts, as to Chase, are dependent on Mr. White having a property right. Next, Chase argues the appropriate Michigan courts have determined that Mr. White does not have any rights that can be enforced in this Court or, for that matter, any other court.

At oral argument, counsel for Chase outlined the state court history of the disputes among Mr. White, Chase, and Mr. and Ms. Riness. Chase emphasized Mr. White's repeated assertions that the Bankruptcy Court lacked jurisdiction over these issues and referred to statements made by Mr. White to the Michigan Court of Appeals. In particular, counsel pointed to two separate statements made by Mr. White in his docketing statements. First, his April 18, 2019 statement:

> 2. Bankruptcy does not affect this matter except, Appellant has filed Chapter 11 on July 30, 2013, converted to Chapter 7 on August 22, 2014. Appellant claimed all matters in this appeal were exempt from the bankruptcy estate per 11 USC 522(d) and/or 11 USC 554 exemptions. All rights were abandoned from the bankruptcy estate to Appellant, regardless of the actual date of abandonment, all abandonment is retroactive to the date of the bankruptcy filing and treated as if no bankruptcy had been filed.

(ECF No. 149-3, p. 4).

Next, his February 2, 2022 statement:

> December 19, 2016, the bankruptcy court ordered the Chapter 7 bankruptcy estate trustee to 11 USC 554 abandon the mining profit and extracted sand & gravel back to White (all abandonment is back to debtor). Trustee had two weeks to appeal, January 2, 2017. White was finally back in control of his mining profit and piles of extracted sand & gravel. On July 31, 2018, Riness called the police, again. August 20, 2018, White sued in Tuscola County Circuit Court to enforce his post-abandonment bankruptcy rights.

13

Bankruptcy jurisdiction ends with abandonment, state court are required to enforce the debtor's state rights. The circuit court dismissed case. White appealed to the MiCOA case #347924.

(ECF No. 149-2, p. 5).

Previously, Mr. White also asserted in his January 4, 2022 Brief on Appeal that the "Michigan Court of Appeals has jurisdiction".

Mr. White tried to explain his change of assertion that this Court is the proper Court to adjudicate his rights by saying he mistakenly relied on *Dewsnup v. Timm*, 502 U.S. 410 (1992). (ECF No. 126-13, p. 14).

Motion to Amend and Motion to Dismiss Standards

Motions to Amend Rule 15(c)

Leave to amend pleadings should be generally granted and any amendment should be deemed to relate back pursuant to Rule 15(c)(1). *Miller v. Am. Heavy Lift Shipping, et. al.*, 231 F.3d 242 (6th Cir. 2000). In *Miller*, the Sixth Circuit Court of Appeals allowed a party to "add even a new legal theory in amended pleading so long as it arises out of the same transaction or occurrence." *Id.* at 248.

Motion to Dismiss Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), a party may assert by motion the "failure to state a claim upon which relief can be granted." The United States Supreme Court has held that in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In so doing, the Supreme Court renounced the previously "'accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief.'" *Id*. at 561-62

(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As explained by the Supreme Court in

*Twombly*, while "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement

of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice

of what the claim is and the grounds upon which it rests," this "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] . . . Factual

allegations must be enough to raise a right to relief above the speculative level," assuming that all

of the complaint's allegations are true. *Id*. at 555 (internal quotations and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009), the Supreme Court confirmed that the

*Twombly* standard applies in all federal civil actions and not just in antitrust disputes as was the

case in *Twombly*. The Supreme Court also emphasized that the assumption that all of the

allegations are true does not apply to legal conclusions: "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing

*Twombly*, 550 U.S. at 555). Moreover, the Supreme Court noted that "where the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed.

R. Civ. P. 8(a)(2)).

In sum, while the plausibility standard first set forth by *Twombly* does not require "'detailed

factual allegations'" or a showing of probability, *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555),

"'the complaint must contain either direct or inferential allegations respecting all material elements

to sustain a recovery under some viable legal theory,'" *Digeronimo Aggregates, LLC v. Zemla*,

763 F.3d 506, 509 (6th Cir. 2014) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538

(6th Cir. 2012)). When deciding a Rule 12(b)(6) motion to dismiss, the Court "must 'construe the

complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The defendant has the burden of showing that the plaintiff failed to state a plausible claim for relief. *Id*.

Res Judicata Standard

Res Judicata – Claim Preclusion

Claim preclusion has been defined as "the relitigation of a claim under a different theory." *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 745 (6th Cir. 2002). Michigan courts have "adopted a broad application of res judicata that bars claims arising out of the same transaction that plaintiff could have brought but did not." *Eyde v. Charter Twp. of Meridian*, 324 N.W.2d 775, 777 (Mich. Ct. App. 1982) (quoted in *Dubuc*, 312 F.3d at 747).

In Michigan, claim preclusion has the following elements: (1) the first action must have resulted in a decision on the merits; (2) the issues must have been resolved in the first action, either because they were actually litigated or because they might have been raised in the first action through reasonable diligence of the parties; and (3) both actions must be between the same parties, or their privies. *Dubuc*, 312 F.3d at 747 (citing *Sloan v. City of Madison Heights*, 389 N.W.3d 418, 422 (Mich. 1986)).

Collateral Estoppel Standard

Collateral Estoppel

A bankruptcy court must determine whether applicable state law would give collateral estoppel effect to the state court judgment. *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315, 317 (6th Cir. 1997). Under Michigan law, collateral estoppel has been defined by the Michigan Supreme Court:

Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was 1) actually litigated, and 2) necessarily determined.

*People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990) (citations omitted).

An issue may be considered "actually litigated" for collateral estoppel determinations if it "is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact." A trial is not necessarily required. *Latimer v. Mueller & Son, Inc.*, 386 N.W.2d 618, 627 (Mich. Ct. App. 1986). If an issue is essential to the judgment, it is "necessarily determined." *Gates*, 452 N.W.2d at 631.

### Rooker-Feldman Doctrine

Under the United States Supreme "Court's Rooker/Feldman abstention doctrine, . . . a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. Grandy*, 512 U.S. 997, 1005-06 (1994) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)).

"[T]he Rooker-Feldman doctrine applies even where a state court judgment may be in error." *Audre, Inc. v. Casey (In re Audre, Inc.)*, 216 B.R. 19, 29 (B.A.P. 9th Cir. 1997).

### Analysis

### I.    Motion to Amend

Mr. White seeks recovery from Chase and Mr. and Ms. Riness under the original theories stated in his complaint, along with new theories as stated in his proposed amended complaint. The Court would normally grant him this right. *Miller* 231 F.3d at 248. If this Court determines that

either the doctrines of res judicata, collateral estoppel, or Rooker-Feldman apply, then his proposed amendments should not be allowed. The Court now turns to the Motion to Dismiss of Chase.

II.     Motion to Dismiss

The Court adopts and restates its Analysis and Conclusion stated in its May 5, 2022 Opinion. The Court next extends its Analysis to the remaining counts. Both Mr. and Ms. Riness and Chase filed motions to strike or dismiss these claims with the Tuscola County Circuit Court. As mentioned previously, the Tuscola County Circuit Court entered three orders on these motions. These orders are as follows in chronological order:

> ORDER GRANTING DEFENDANT, JPMORGAN CHASE BANK, N.A.'S
> MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
>
> After hearing oral argument, and upon review of Chase's Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff's Response to Chase's to Dismiss Plaintiff's Amended Complaint, the Riness Defendants' Motion to Strike Plaintiff's Amended Complaint, the Court finds as follows:
>
> Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted against Chase pursuant to MCR 2.116(C)(7) and (C)(8), for the reasons stated on the record and presented to the Court in the briefs. Counts 1, 2, 4, 6, and 11 are dismissed with prejudice.
>
> NOW, THEREFORE, IT IS HEREBY ORDERED THAT Counts 1, 2, 4, 6, and 11 of Plaintiff's Amended Complaint are dismissed with prejudice and without costs.
>
> IT IS FURTHER ORDERED THAT no further claims may be brought against JPMorgan Chase Bank, N.A.
>
> This is not a final order and does not close the case.
>
> IT IS SO ORDERED.

(ECF No. 143-4).

***

OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR RECONSIDERATION

The Plaintiff has filed a Motion for Reconsideration pursuant to MCR 2.119(F). The Court has carefully reviewed the motion. The Court finds that the motion merely presents the same issues ruled on by the Court, either expressly or by reasonable implication. The Plaintiff has demonstrated no palpable error by which the Court and the parties have been misled. The burden imposed by MCR 2.119(F) cannot be satisfied or met by merely reasserting arguments that have already been raised, considered and rejected by the Court either expressly or by reasonable implication, or by raising new legal theories or facts "which could have been pled or argued prior to the trial court's original order." *Charbeneau v. Wayne County General Hosp*, 158 Mich App 730, 734 (1987).

Accordingly, NOW THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion for Reconsideration is hereby considered and DENIED.

The entry of this Opinion and Order resolves the last pending claim and closes this case.

(ECF No. 143-6).

***

ORDER GRANTING DEFENDANTS RINESS' MOTION TO STRIKE; DISMISSING PLAINTIFF'S ACTION; DISMISSING DEFENDANTS' RINESS COUNTER-COMPLAINT; AND CLOSING THE CASE

A re-hearing was held September 13, 2021 at approximately 9:00 am regarding Defendants Riness Motion To Strike. Based on the transcript of that hearing, THE COURT HEREBY ORDERS:

IT IS ORDERED Counts #1 Common Law Conversion and #2 Statutory Conversion are dismissed per MCR 2.116(C)(7) statute of limitations and (C)(8) failure to state a claim upon which relief can be granted. MCR 2.116(C)(7) is based on *Tillman v Great Lakes Truck Center*, 277 Mich App 47 (2007). The Court finds the applicable statute is MCL 600.5805(2) with a 3-year statute of limitations. The Court finds MCL 600.5813 and its 6-year statue of limitations is not applicable. The Court concludes the statute of limitations began to run in August and September of 2013.

IT IS ORDERED Counts #3 Unjust Enrichment; #4 Trespass To Chattels; #7 Breach of Contract Personal Property; #8 Breach of Contract Profit á Prendre Future Mining Rights; #9 Anticipatory Breach of Contract Riness; December 29, 2014 Offer To Sell Real Estate; and #10 Right of Entry on Land are dismissed per MCR 2.116(C)(8) failure to state a claim upon which relief can be granted for being outside the Court of Appeals, case #347924, June 18, 2020 remand directive.

IT IS ORDERED Counts #5 Exemplary Damages; #6 Declaratory Action; and #11 Breach of Duty of Candor are dismissed per MCR 2.116(C)(8) failure to state

19

a claim upon which relief can be granted as they are not independent causes of action and are beyond the very specific Court of Appeals remand directive.

IT IS FURTHER ORDERED THIS COURT does not address whether the statute of limitations was tolled while assets were held in a bankruptcy estate.

IT IS FURTHER ORDERED THIS COURT only addresses the statue of limitations for Counts #1 Common Law Conversion and #2 Statutory Conversion, as Defendants did not raise MCR 2.116(C)(7) for any other Count.

IT IS FURTHER ORDERED THIS COURT finds the Court of Appeals remand decision does not grant Mr. White to right to amend his complaint for subsequent developments to tangible personal property or for any matter other than extracted sand & gravel and other tangible personal property.

IT IS FURTHER ORDERED THIS COURT does not address whether Defendants' JPMorgan and Riness waived their statue of limitations defense by not raising it in the original action.

IT IS FURTHER ORDERED THIS COURT finds that Defendant Riness' Counter-Complaint against Plaintiff-Counter Defendant White, to be an affirmative defense &/or a setoff & not an independent cause of action.

This is a final order.

(ECF No. 143-7).

Mr. White appealed these orders, but later dismissed his appeal.

With this record, this Court must decide if either the Rooker-Feldman doctrine, res judicata, or collateral estoppel applies. The Court concludes that all three doctrines apply.

As to the Rooker-Feldman doctrine, Mr. White is essentially asking this Court to review the judgments of the Tuscola County Circuit Court and the Michigan Court of Appeals. While there is case law that limits the application of the Rooker-Feldman doctrine, none of the limitations apply here. Moreover, any federal right claimed by Mr. White is based on state law and the appropriate Michigan state courts have held Mr. White has no property rights under Michigan law. It is not the providence of this Court to overrule these determinations.

The same result occurs applying res judicata. The Opinions and Orders of the Tuscola County Circuit Court and the Michigan Court of Appeals decided the merits. The issues were resolved in these actions and the parties are identical. The dismissal of the last Michigan Court of Appeals action leaves the determination of the Tuscola County Circuit Court as the final resolution. Accordingly, res judicata principles dictate that Chase's Motion to Dismiss must be granted.

Likewise, collateral estoppel prohibits this Court from relitigating these issues. The issues raised in Mr. White's complaint and proposed amended complaint were actually litigated and necessarily determined in the Michigan courts. In particular, the rights of the parties were determined under Michigan law to the extent that Mr. White was judged to have no actionable or enforceable rights under Michigan law. With no state law property rights, he cannot ask this Court to enforce any federal bankruptcy law rights or issue any remedy.

Mr. White initiated the state court proceedings in 2018 because he thought the December 19, 2016 Order of this Court granting his request to abandon property to him ended this Court's jurisdiction. He stated that conclusion a number of times, and as late as February 2, 2022, believed he was correct. After dismissal of the Michigan Court of Appeals proceeding, he now argues that he mistakenly relied on *Dewsnup v. Timm*, 502 U.S. 410 (1992) to conclude this Court lacked jurisdiction over property once it is abandoned. The Court has repeatedly reviewed *Dewsnup* and cannot glean a statement from that Opinion to support Mr. White's belief.

Regardless of Mr. White's reasons for proceeding in state court, it is true that property abandoned by the bankruptcy court is no longer property of the bankruptcy estate, and the bankruptcy court no longer has jurisdiction over the property. *Elscint, Inc. v. First Wis. Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir. 1987); 5 Collier on Bankruptcy ¶ 554.02 (16th ed.

2023). Since the property in question was abandoned, this Court cannot and should not continue this proceeding.

III.    Motion for Litigation Injunction

Chase additionally requests an injunction to prohibit Mr. White from filing further suits against it arising from or out of the transactions detailed in this adversary proceeding. The Sixth Circuit Court of Appeals has endorsed this remedy if a party is a prolific litigator so long as the court entering the injunction allows the party the right to obtain leave to file a complaint. *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987). Mr. White has filed three complaints in two different courts. Also, the September 13, 2021 Tuscola County Circuit Court Order states that "no further claims may be brought against JPMorgan Chase Bank, N.A.".

This Court has carefully considered whether a so-called litigation injunction is appropriate. The factors in favor of an injunction are the number of complaints filed by Mr. White in this case and in the state court against Chase and the determinations of the Tuscola County Circuit Court that claims bar is appropriate. The factors against an injunction are the general rights of a party to seek redress from the courts and this Court's traditional reluctance to enjoin legal actions. Albeit a close call, this Court sides with the notion to enter a litigation injunction, but will do so with the condition that Mr. White have the right to request leave to file another complaint.

This Court does not bar or enjoin Mr. White from appealing this Opinion and its corresponding order or any related orders, or from seeking a writ of certiorari.

## IV.    Sanctions

Chase also requests that this Court award it costs and fees, including attorney fees, incurred in this action.  Chase does not cite any specific authority other than to observe and argue that the number of complaints filed by Mr. White and his tactics of pivoting back and forth between state and bankruptcy court warrant the award of sanctions.  While the Court understands the frustration of Chase, the Court deems the imposition of a litigation injunction a sufficient remedy and declines to award additional sanctions, at this time.

## V.    Defendants Michael and Elizabeth Riness

Chase filed its motions and the co-Defendants generally joined the positions expressed by Chase. For example, on June 21, 2023, Mr. and Ms. Riness filed an Objection to Plaintiff's Motion To File Amended Adversary Proceeding Complaint and reiterated their joinder and concurrence with the pending motions of Chase. Accordingly, they are entitled to the same relief as Chase.

## VI.    Motion to Amend Revisited

The Court completes its analysis of the pending matters by returning to Mr. White's motion to amend.  Because the Court concludes that the theories added to the Complaint are based on the same transactions or occurrences that were deemed to be insufficient to state a claim by the Tuscola County Circuit Court and the Michigan Court of  Appeals, it is futile for Mr. White to amend his complaint.  For these reasons, the Court denies Mr. White leave to amend his complaint.

<u>Conclusion</u>

For the reasons stated in this Opinion, the Court:

1.     Denies Mr. White's Motion for Leave to File Amended Adversary Proceeding Complaint.

2.     Grants Chase's Motion to Dismiss.

3.     Grant's Chase's Motion for Litigation Injunction, with conditions.

4.     Denies, without prejudice, Chase's Motion for Sanctions.

The Court will enter an Order consistent with this Opinion and the rules of this Court for entry of orders.

**Not for Publication**

**Signed on December 28, 2023**



/s/ **Daniel S. Opperman**

**Daniel S. Opperman**
**United States Bankruptcy Judge**